LAWRENCE, Judge,
dissenting.
I must respectfully dissent because I am of the view that this court’s decision in Wooten v. State, 385 So.2d 146 (Fla. 1st DCA 1980), is controlling in the case now before us. The facts as related in Wooten are as follows:
[A] confidential informant called the police station and told Detective Clayton that Wooten would be at the courthouse that morning, that he would be back at his place of business around noon, and that he would have heroin and cocaine hidden in his crotch. Clayton had successfully used information from the informant before and had heard “street talk” that Wooten was dealing in drugs. Around noon the informant called back and told the officer taking the call that Wooten was at his place of business and had drugs on him. He described Wooten’s clothing and his ear which would be parked nearby. The information was relayed to Clayton who with the aid of other officers went to the described location, saw Wooten who was dressed as they had been told, arrested him for possession of a controlled substance, and searched him. The search revealed two leather pouches of heroin and cocaine secreted in the crotch of his pants.
Wooten, 385 So.2d at 146-47. The Wooten court, finding a valid search, cited with approval the well-established test for the lawfulness of a search and subsequent arrest:
It is whether the facts and circumstances within the officers’ knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Applying that test, we concur with the trial judge’s conclusion that there was probable cause and the arrest was legal. Although there was no direct testimony concerning the source of the informant’s information and the officer who took the second call admitted that he could not remember if the informant had said that he had seen the defendant dealing in drugs that day, we think the record supports the conclusion of the trial judge that “a fair and common sense reading of the testimony indicates that the informant clearly had personal knowledge of the defendant’s possession of drugs.” Additionally, the officers were able to corroborate the other information provided concerning the time, place, car, and clothing.
Wooten, 385 So.2d at 147.
The majority does not seriously question the reliability of the Cl, writing that “the Cl’s reliability is fairly well established.” Majority op. at 704. I find however, that the record supports a stronger characterization of the Cl’s reliability and is significant because it bears upon the adequacy of a predicate to support a conclusion that the Cl’s source of information was his own personal observation. It is also important in considering the total circumstances concerning the issue of probable cause. The Cl clearly was a person accustomed to being on the streets where the arrest took place. Officer Putnam testified that: “He walks everywhere he goes”; “He always walks. He doesn’t have a vehicle.” Putnam further testified on April 25, 1992, that: “since February he [the Cl] has given me information about every three or four days”; and that he met with the Cl during this time at “certain locations that we preset,” as the result of an agreement that they would meet every three or four days. Putnam’s conclusion as to frequency ranged from “that’s 30 or 40 times he has given me information at least” to “at least 20, yes sir.”
The corroboration referred to by the Wooten court consisted solely of “innocent de *706 tails,” i.e., details readily visible to any observer, consisting of Wooten’s identification, his location, and a description of his car, which was nearby. Wooten was not observed by the police in any conduct which was predicted by the Cl, nor the least bit suspicious as far as illegal activity was concerned. Although the Cl predicted during the first phone call that Wooten would be at the courthouse earlier in the morning, and his place of business around noon, this information was not verified by the police. The police, upon arriving at Wooten’s place of business, could not independently determine anything as to Wooten’s whereabouts on that day, except that he was at his place of business upon their arrival. Neither was the source of the Cl’s information related to the officers. This court nevertheless found the arrest and subsequent search of Wooten to be valid.
As in Wooten, I am of the view that a “fair and common sense reading” of the testimony in the instant case indicates that the Cl had personal knowledge of Butler’s possession of cocaine. The strong reliability of the Cl and the detailed information concerning illegal activity, related by him within fifteen minutes before the arrest, had such indicia of trustworthiness as to make unnecessary independent corroboration by the police of more than “innocent details.”
The majority appears to give great weight to this court’s decision in Holmes v. State, which I believe to be distinguishable. In Holmes, the police received a “tip” from a confidential informant, and made an arrest without independent corroboration. The informant’s reliability was based upon a history of having been “used six to twelve times before and given reliable information ‘probably five or six times.’ ” Holmes, 549 So.2d at 1120. The Cl’s information lacked detail in that: only a car (not an individual) was identified; no location of the drugs in the car was provided; no information was given as to how long the car had been parked in its then-present location; and the source of the Cl’s information was missing. The Holmes court found the search to be illegal because the Cl’s information concerning the presence of drugs was sketchy in detail and not independently corroborated by the police beyond those “innocent details” readily apparent to any citizen observer.
I am persuaded that the Holmes court required independent corroboration of other than so-called “innocent details” only because of the marginal reliability of the Cl and the sketchy nature of the details which he furnished. In contrast, the high reliability of the instant Cl, and the detailed information furnished only minutes before arrest, distinguishes the case now before us from Holmes.
The United States Supreme Court, in Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), adopted a “totality-of-the-circumstances” approach in determining whether probable cause exists for a search:
This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific “tests” be satisfied by every informant’s tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a “practical, nontechnical conception.” Brinegar v. United States, 338 U.S. 160,176, 69 S.Ct. 1302,1311, 93 L.Ed. 1879 (1949). “In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.” Id., at 175, 69 S.Ct., at 1310....
[[Image here]]
[Pjrobable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules. Informants’ tips doubtless come in many shapes and sizes from many different types of persons....
If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular ease, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. See United States v. Sellers, 483 F.2d 37 (CA5 1973)....
*707 Gates, 462 U.S. at 231, 232, 233, 103 S.Ct. at 2328, 2329, 2330, 76 L.Ed.2d at 543, 544, 545. The totality-of-the-cireumstances approach, when applied to the instant case, leads me to conclude that probable cause existed for the search and seizure of cocaine from Butler.
The majority finds the search and seizure invalid on two grounds: “(1) there was insufficient detail in the Cl’s tip as to the source of the CFs knowledge; and (2) the police failed to corroborate the information in the tip through independent police work.” Majority op. at 704. In addition to the reasons already expressed, I would validate the search even upon the rationale followed by the majority. Officer Putnam testified on cross-examination by defense counsel that, upon arriving at the scene of the arrest, Butler turned and attempted to walk up a set of stairs. That testimony is reflected in the record of the suppression hearing as follows:
A. [Putnam] All right. According to my deposition, yes, he did turn and attempt to walk up the stairs.
Q. [defense counsel] Okay. And then you basically just asked him to come back to you?
A. Yes, sir. Actually I believe I walked to him. I usually don’t ask them to come to me.
Q. But, in any event, he did stop, right?
A. Yes, sir, he did.
Q. And he turned around and came towards you?
A. Well, I came to him. He at least stopped.
Q. Then when the two of you got together, then you immediately began to pat him down?
A. Yes, sir.
Such conduct on the part of Butler, even under the majority rationale requiring something beyond corroboration of innocent details, would in my view be sufficient to satisfy any such requirement. As in Daniels v. State, that activity alone would of course not support a lawful search. But Butler’s response to the police in turning and attempting to walk up the stairs, coupled with the other circumstances of this case, lead me to the conclusion that probable cause existed for the search.
I find the facts of the instant case to be consistent with our decision in Wooten and distinguishable from our decision in Holmes. I would therefore affirm the trial judge’s order finding the search and seizure to be valid.
As noted by the majority, our sister court in State v. Flowers and State v. Brown reached an opposite result from the majority view in the instant case; thus, I agree that certification of conflict is appropriate.